| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**BECKER MEISEL LLC**<br>Eisenhower Plaza II<br>354 Eisenhower Parkway, Suite 1500<br>Livingston, New Jersey 07039<br>(973) 422-1100<br>Attorneys for Stacey L. Meisel, Chapter 7 Trustee<br>STACEY L. MEISEL (SM9539)<br>BEN H. BECKER (BB6377) | |
| In re:<br><br>HOME DÉCOR PRODUCTS, INC.,<br><br>                Debtor. | Case No. 09-17408(MS)<br>Chapter 7<br><br>**Hearing Date:** December 13, 2010<br>   at 2:00 p.m.<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY OF STACEY L. MEISEL, CHAPTER 7 TRUSTEE, TO SEYMOUR HOLTZMAN'S OBJECTION TO SECOND INTERIM FEE APPLICATION OF GENOVA, BURNS & GIANTOMASI, AS SPECIAL COUNSEL TO CHAPTER 7 TRUSTEE FOR SERVICES RENDERED AND DISBURSEMENTS INCURRED FROM DECEMBER 1, 2009 THROUGH SEPTEMBER 30, 2010**

TO:   THE HONORABLE MORRIS STERN
        UNITED STATES BANKRUPTCY JUDGE

      Stacey L. Meisel, Chapter 7 Trustee ("Trustee") for the debtor, Home Décor Products, Inc. ("Home Décor" or the "Debtor"), by and through her counsel, Becker Meisel LLC, hereby asserts the following Reply to Seymour Holtzman's ("Holtzman") objection ("Holtzman Objection") to the *Second Interim Fee Application of Genova, Burns & Giantomasi as Special Counsel to Stacey L. Meisel, In Her Capacity as Chapter 7 Trustee of Home Décor Products, Inc. Regarding the Administration of the Home*

1

*Décor Products, Inc. 401(k) Plan, for Services Rendered and Disbursements Incurred from December 1, 2009 through September 30, 2010* ("Genova Burns Second Fee Application"):

### Introduction

1.	The Holtzman Objection is baseless and should be disregarded by the Court with regard to the Genova Burns Second Fee Application. As indicated below, Genova, Burns & Giantomasi ("Genova Burns") performed work for the Trustee that is squarely within the duties and responsibilities of the Trustee.

2.	The Bankruptcy Code specifically requires that if at the commencement of the case the Debtor served as the administrator of an employee benefit plan, the Trustee must "continue to perform the obligations required of the administrator."

3.	The Trustee retained Genova Burns as special counsel for the Debtors 401k plan ("401k Plan" or the "Plan") in order to assist the Trustee in fulfilling those obligations and assisting her to properly administer, terminate and liquidate the Plan.

4.	Therefore, as to the matter that is before the Court, the Genova Burns Second Fee Application, there is no issue as to whether there has been a benefit to the estate as clearly, "benefit to the estate" encompasses assisting a trustee in fulfilling the duties that have been imposed upon the trustee by Congress.

5.	To the extent that Mr. Holtzman goes further in his papers to request that the fees of other professionals be delayed until the conclusion of the case, such request is also without merit and certainly beyond the scope in response to the Genova Burns Second Fee Application.

6. Even if the Court were to consider the request, however it is clear that the Trustee and her professionals have acted appropriately and diligently in an effort to satisfy statutorily imposed duties and, therefore, there is no factual or legal basis to defer professional compensation until the conclusion of the case.[1]

7. For starters, Holtzman's contention that the Trustee at her appointment simply inherited $2.3 million of unencumbered assets is not quite the whole story.

8. At the inception of this case, Mr. Holtzman filed a motion for stay relief seeking permission to take all necessary actions to repossess and dispose of all collateral pledged to Holtzman by the Debtor. The Holtzman application for stay relief identified the Debtor's collateral as "Debtor's cash, inventory, chattel paper, accounts, general intangibles and equipment (the "collateral"). The motion further alleged that Holtzman properly perfected his security interest in the collateral.

9. The Trustee and her professionals convinced Holtzman to abandon his claims against those funds as part of the sale of certain of the Debtor's assets to him. Therefore, it is the result of this and other efforts by the Trustee and her professionals that the Trustee has collected a little over three million dollars in this case to date.

10. Moreover, as this Court well knows and Holtzman conveniently ignores, Title 11 of the United States Code (the "Bankruptcy Code") imposes upon the trustee numerous duties beyond simply recovering and disposing of assets that benefit the estate.

---

[1] The Holtzman Objection is outside of the scope of the Genova Burns Second Fee Application. To respond to same, the Trustee has attempted herein to provide the Court with a fair overview of the complexity of this bankruptcy case and the actions the Trustee and her professionals have undertaken to date to administer the case. A more detailed history of the work undertaken thus far by the Trustee and her professionals can be found in the narratives and exhibits to the various fee applications filed by professionals in this case. The Trustee hereby refers and incorporates those herein in support of this response. *See* Docket Entry Numbers 84, 92, 99, 116, 128, 235, and 237.

3

11.  The Trustee is engaged in the following activities, including, but not limited to, reviewing the Debtor's executory contracts relating to internet marketing and search list optimization and ultimately negotiate termination of such contracts, administering the Debtor's qualified retirement Plan, to orderly terminate the Plan and ensure rollover to the Debtor's former employees, examining the financial affairs of the Debtor, which have required the review of thousands of documents and computer files, reviewing and responding to demands made by various vendors seeking reclamation of goods, starting to assess over 200 claims filed by creditors, including various tax-related issues and accounting for property received.

12.  Whether or not those endeavors have or will result in additional funds for potential distribution for creditors is irrelevant, they are nonetheless mandated by the Bankruptcy Code and per se, benefit the estate.

13.  Contrary to Holtzman's assertion otherwise, fulfilling all of her obligations and administering cases large and complex as this one takes time and effort.  The Trustee has made remarkable progress toward administering the case.

14.  Obviously, the Bankruptcy Code contemplates that the Trustee and the professionals hired to assist her with their various responsibilities must be compensated for their efforts.  In fact, to ensure that qualified professionals like the ones hired in this case are willing to dedicate their time and experience in bankruptcy cases, Congress unmistakably provided priority to payment of professionals, as well as interim compensation for such professionals.

15. Holtzman has provided no legal or factual basis (and none can possibly exist) to trump that Congressional mandate.

## Factual Background

### I. Debtor's Business.

16. Before filing for bankruptcy, the Debtor, founded in October of 2000, was known as a leading online retailer, offering at times 450,000 luxury and everyday brand items for all aspects of the home including kitchen, bath, hardware, lighting, tableware, fireplaces, outdoor, and other home décor products.

17. Starting with its flagship website, HomeClick.com, the Debtor grew to maintain upwards of eight different websites including Absolutehome.com, KnobsandThings.com, Hechinger.com, PoolClick.com, Barbecues.com, ChefsCorner.com, and Cliquidate.com, as either registered trademarks or trademarks of Home Décor Products, Inc.

18. During the course of its existence, the Debtor grew rapidly, entering into significant business deals, as well as complex equity and debt transactions, which resulted in over $75 million entering the company's coffers and tens of millions of these dollars exiting the company to insiders in at least one transaction.

19. It appears the Debtor hit its peak revenue in 2006 when it reported revenue goals between $90,000,000.00 and $100,000,000.00. And at year end 2006, the Debtor reported significant inventory reserves totaling $1,867,874.00.

5

**II.    The Bankruptcy.**

20.    On March 27, 2009, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

21.    There are 345 creditors' claims, totaling $35,126,455.15. Holtzman's filed unsecured claim totals $4,264,054.76, or roughly 12% of the entire amount claimed by the creditors in this case. In fact, $4,618,739.12 of the $35 million claims were filed as secured and/or priority, and would be paid *prior* to Holtzman's unsecured claim.[2]

22.    On the Petition Date, Stacey L. Meisel was appointed and duly qualified as the Chapter 7 Trustee.

23.    Since her appointment, the Trustee has worked diligently with her professionals to administer this estate in accordance with her statutorily mandated responsibilities.

    **A.    Recovery and Disposition of Assets for the Estate.**

24.    One of the Trustee's responsibilities is, of course, to recover and dispose of assets of the estate. To date, the Trustee has collected just over three million dollars for the estate. The Trustee collected this money through her diligence and the diligence of her professionals.

---

[2] These figures can be found on the Claims Register. By identifying the claims on the Claims Register, the Trustee is by no means attesting to the validity of any of the represented claims. To the contrary, the Trustee fully reserves her rights to challenge any claim, which of course, may materially alter the value and number of claims accepted as valid.

25. Ironically, Holtzman almost stood in the way of the Trustee collecting one of the primary assets of the estate – the $2,187,819.53 left in the Debtor's checking account when it filed for bankruptcy.

26. As indicated above, Holtzman asserted a lien against all assets of the Debtor, including its cash, as set forth in his stay relief motion. *See* Docket Entry Number 12-1.

27. After analyzing and evaluating Holtzman's lien claim, the Trustee, along with her attorneys, embarked on what turned out to be extensive negotiations with the attorneys for Holtzman as to the terms and conditions of the sale of certain assets to Holtzman or his designee, subject to any higher or better offer. The Trustee and Holtzman memorialized such sale by way of an "Asset Purchase Agreement." *See* Docket Entry Number 27, Exhibit A.

28. As part of the sale, Holtzman relinquished his claim to the $2,187,819.53. *See* Docket Entry Number 27, Exhibit A, p. 4, § 1.25 and p. 8, § 2.1.2.8 (The Asset Purchase Agreement specifically defined "excluded assets," as those assets that would be excluded from the sale to Holtzman; notably, all cash and cash equivalents, including the $2,187,819.53 in the Debtor's bank accounts, were part of the "excluded assets" and therefore, not sold to Holtzman).

29. In addition to securing the $2,187,819.53 in the Debtor's checking account, the Trustee also reached an agreement with Holtzman on the ownership and/or rights to other assets of the estate, which resulted in additional monies being received by the estate.

7

30. The Trustee and her professionals undertook a number of other activities to recover additional assets for the estate. For instance, the Trustee and her professionals researched, investigated and started to pursue potential claims including preference claims.

31. To accomplish this task, the Trustee and her professionals had to obtain and review numerous financial records, including subpoenaing records from former accountants, financial advisers and Debtor's banks.

32. Based upon a comprehensive review of the records, the Trustee and her professionals identified a number of potential claims. For example, they compiled a list of potential preference claims identifying 224 potential preference claims totaling $10,658.214.40 in potential recovery.

33. Over the past several months, the Trustee and her professionals have attempted to recover on such potential preference claims. These ongoing efforts already have resulted in the Trustee recovering money for the estate and will continue over the next year or two to bring additional funds into the estate.

B. **Other Efforts to Administer the Estate.**

34. While recovering and disposing of assets is one of the Trustee's responsibilities, it is by no means the only duty, as the Trustee is charged throughout the Bankruptcy Code with a veritable laundry list of other statutorily imposed duties. The Trustee and her professionals have been diligently pursuing many of these duties, as well.

35. By way of example, as required under the Bankruptcy Code, the Trustee and her professionals investigated the Debtor's financial affairs. As part of this

investigation, the Trustee and her retained professionals obtained and reviewed financial records and other documents from a number of different sources and interviewed former employees in an effort to understand, among other things, the Debtor's history, operations and accounting and financial systems. In the end, the investigation into the Debtor's financial affairs aided the Trustee in a number of ways including, but not limited to, assisting in her recovering and disposing of assets, identifying potential claims and reviewing creditors' claims.

36. The Trustee also reviewed claims by creditors that they had liens, held leases or other rental arrangements on various miscellaneous pieces of equipment and other assets of the Debtor, as per the mandates of the Bankruptcy Code. The Trustee resolved many of these claims. In some instances, the Trustee and her professionals filed complaints against various claimants demanding that they prove the nature, extent and validity of their liens. *See* Adversary Proceeding Number 09-01760(MS).

37. Similarly, the Trustee and her professionals reviewed certain executory contracts relating to internet marketing and search list optimization. The Trustee and her attorneys were required to contact representatives of the companies with which the Debtor had entered into contracts, exchange information with such representatives, and ultimately negotiate consensual termination of the contracts.

38. Further, as required by the Bankruptcy Code, the Trustee and her attorneys spent considerable time reviewing and responding to almost 300 creditors' claims.[3] To

---

[3] The Trustee and her professionals reviewed 287 claims as of the filing of Becker Meisel's second interim fee application.

9

date, there are 345 claims totaling $35,126,455.15, which require ongoing attention by the Trustee's attorneys.

39. As part of the review of claims, the Trustee and her professionals reviewed Section 503(b)(9) claims and prepared a motion to set the bar date to allow her to determine the breadth of such claims. *See* Docket Entry Number 125. The Trustee and her attorneys also responded to two claimants' motions regarding their Section 503(b)(9) claims (*see* Docket Entry Numbers 54 and 77), and continue to have settlement discussions with regard to such motions.

40. Also as part of her review of claims, the Trustee and her professionals analyzed vendor reclamation demands. The Trustee and her attorneys responded to such demands, by advising the vendors that they failed to meet the standard permitting reclamation under Section 546(c) of the Bankruptcy Code.

41. In addition to the above, the Trustee and her professionals have undertaken myriad other actions necessary toward the administration of the estate including, but not limited to: addressing various tax related issues, accounting for property of the estate, and terminating the 401k Plan.

### C.    Time and Professionals.

42. Administering an estate of this size and complexity takes time and the assistance of professionals.

43. The Trustee simply does not have the skill and expertise to handle every portion of a complicated bankruptcy case such as this one. As a result, she retained professionals with the experience and expertise necessary to assist her.

44. Each such professional was retained for a very particular aspect of the bankruptcy case, as outlined below:

- Becker Meisel LLC, as attorneys to the Trustee, to assist the Trustee in the administration of the assets of the estate (Docket Entry Number 20), and as general bankruptcy counsel for the Debtor's Plan, to provide general guidance as to the orderly and proper administration, termination and liquidation of the Plan assets (Docket Entry Number 68);

- Amper, Politziner & Mattia, as accountants for the Trustee, to assist the Trustee investigate possible preferences and fraudulent conveyances, as well as prepare tax returns (Docket Entry Number 32);

- Blank Rome, LLP, as special counsel to the Trustee, to assist the Trustee in investigating and prosecuting potential causes of action under Chapter 5 of the Bankruptcy Code against insiders (Docket Entry Number 63);

- Genova, Burns & Giantomasi, as special counsel for the Debtor's Plan, to perform the necessary tax and pension services to cause the Plan to be terminated and all assets to be distributed in accordance with the Internal Revenue Code and other applicable law (Docket Entry Number 68);

- WithumSmith & Brown PC, as accountants to the Debtor's Plan, to perform the necessary accounting services specifically with regard to the Plan (Docket Entry Number 68); and

- The Intelligence Group, as forensic computer specialists to the Trustee, to

perform forensic computer analysis relating to the Debtor's computer accounting system and other records maintained on the Debtor's computer system (Docket Entry Number 120).

### The Trustee's Duties Pursuant to Section 704(a) of the Bankruptcy Code and Compensation of Professionals

45. The bankruptcy estate is a separate legal entity created for the efficient administration of a debtor's financial affairs. A trustee serves as the representative of the estate and is an integral part of any case. *See generally,* 11 *U.S.C.* § 323(a) (stating the role and capacity of a trustee as the "representative of the estate"); *see also In re Samson Indus., Inc.*, 108 B.R. 545, 550, n. 2 (Bankr. E.D.Pa. 1989) ("[a] bankruptcy trustee is a creature of the bankruptcy process and a fiduciary of the highest order to the court"); *Rieser v. Baudendistel (In re Buckeye Countrymark, Inc.),* 251 B.R. 835, 840 (Bankr. S.D.Ohio 2000) (providing that "a bankruptcy trustee is a separate legal entity").

46. A trustee acts for the estate, and neither represents the debtor nor any of the individual creditors of the estate. *See In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000) ("[a] paramount duty of a trustee … in a bankruptcy case is to act on behalf of the bankruptcy estate"); *In re Baird*, 112 F. 960, 960 (E.D.Pa. 1902) (generally providing that the trustee "act[s] for the estate").

47. In fulfilling the role as fiduciary for the estate, a trustee is vested with certain general and specific responsibilities. Section 704(a) contains an enumerated list of the trustee's specific responsibilities. The trustee shall, *inter alia*:

> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with

12

> the best interests of parties in interest; (2) be accountable for all property received; … (4) investigate the financial affairs of the debtor; (5) … examine proofs of claims and object to the allowance of any claim that is improper; (6) … oppose the discharge of the debtor; (7) … furnish such information concerning the estate and the estate's administration as is requested by a party in interest; (8) … file with the court … periodic reports and summaries of the operation of … business …; (9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee … (11) if, at the time of the commencement of the case, the debtor … served as the administrator … of an employee benefit plan, continue to perform the obligations required of the administrator…

11 *U.S.C.* § 704(a).

48. In addition to Section 704(a), a myriad of other sections of the Bankruptcy Code grant the trustee other similar powers and duties. For example, she may sue officers, directors, and other insiders to recover fraudulent or preferential transfers of the debtor's property on behalf of the estate (Sections 547(b)(4)(B), 548), or assume or reject any executory contract or unexpired lease of the debtor (Section 365). *See generally,* 11 *U.S.C.* § 547, 548, 365.

49. Clearly, a trustee is not expected to have the education, experience and/or expertise to effectively perform all actions required, especially in complex bankruptcy cases, which, for instance, often require knowledge about matters, such as federal, state and local tax laws, securities law or ERISA law. *See In re Metropolitan Hosp.,* 119 B.R. 910, 917 (Bankr. E.D.Pa. 1990) (a trustee should consider professionals with "special knowledge and skill usually achieved by study and educational attainments[.]").

50. As a result, the Bankruptcy Code contemplates that the trustee will engage various professionals to help her comply with the above responsibilities. *See generally,*

13

11 *U.S.C.* § 327(a) (providing that "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons ... to represent or assist the trustee in carrying out the trustee's duties").

51. Logically, it follows that the Bankruptcy Code has also accounted for compensation of such professionals for their efforts and diligence in assisting the trustee. *See generally,* 11 *U.S.C.* § 330(a) (allowing "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses" incurred by the trustee, her professionals and paraprofessionals).

52. In fact, Congress made its intention clear that full compensation for professionals is favored over a larger proportionate compensation to a debtor's creditors. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 851 (3d Cir. 1994) (citing to the legislative history of Section 330(a) and providing that "Congress has unmistakably and expressly made a policy choice favoring full compensation for ... attorneys over greater proportionate compensation to the debtors' creditors[.]")*; see also* 11 *U.S.C.* § 507 (generally providing priorities of expenses and claims, and affording the trustee's administrative expenses the highest level of priority).

53. In stating this intent, Congress abrogated the old notion of "economy of administration", *i.e.*, limiting professional fees to conserve assets of the estate. *See In re Child World, Inc.,* 185 B.R. 14, 16 (Bankr. S.D.N.Y. 1995); *Busy Beaver*, 19 F.3d at 851, n. 24 ("[n]otions of economy of the estate in fixing fees are outdated and have no place in [the] [B]ankruptcy [C]ode.").

54. To further ensure fair and adequate compensation to professionals, the Bankruptcy Code specifically provides for the award of interim compensation. *See generally,* 11 *U.S.C.* § 331 (allowing for interim compensation, and specifically that "[a] trustee … or any professional person employed under [S]ection 327 … may apply to the court not more than once every 120 days after an order for relief … for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred[.]").

55. Here, Congress again made its policy choice clear, and "intended that the practice of interim compensation become system-wide as part of the intent to make bankruptcy practice more attractive to qualified professionals." 3 Collier on Bankruptcy, ¶ 331.01[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

56. The rationale behind Section 331's allowance for interim compensation is simple: "to relieve counsel and other professionals of the burden of financing lengthy bankruptcy proceedings." *In re Comm'l Consortium of Cal.*, 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991); *see also Child World*, 185 B.R. at 17 (noting the rationale for interim compensation); *In re Publ. Serv. Co. of NH,* 138 B.R. 660, 662 (Bankr. D.N.H. 1992) (recognizing that interim allowances are intended to alleviate hardship to the trustee's professionals involved in lengthy reorganizations).

## Holtzman's Objection Is Baseless

**I.     Challenge to the Genova Burns Second Fee Application**[4]

57.     As indicated above, Genova Burns performed work for the Trustee that was squarely within the duties required by the Trustee under the Bankruptcy Code.

58.     Pursuant to Section 704(a)(11) of the Bankruptcy Code, the Trustee is required to act on behalf of the Debtor's 401(k) Plan administrator.

59.     In furtherance of this responsibility, the Trustee reviewed the Debtor's 401(k) Plan, as well as its monetary balance and the employees who rolled over their account balances prior to the bankruptcy filing and those that remained Plan participants as of the date of the filing.

60.     Based upon her findings, the Trustee filed a motion to (1) retain professionals, including Genova Burns to provide guidance to her in the termination and rollover of the Plan and (2) to permit the Trustee to pay for all fees and expenses associated with the termination and rollover of the Plan from assets of the Bankruptcy estate and not Plan assets. *See* Docket Entry Number 58.[5]

61.     The Court granted the motion and entered an Order approving the Trustee's retention of Genova Burns, which expressly provides for payment to Genova Burns (as well as other professionals) from assets of the Debtor's estate, again, which was never objected to by any party. *See* Docket Entry Number 68.

---

[4] Holtzman has not challenged the reasonableness of Genova Burns' fees. His Objection does not identify a single time entry that he contends is unreasonable and should be reviewed by the Court.
[5] Notably, Holtzman did not object to the motion.

16

62.     Since the entry of that Order, Genova Burns has worked diligently and in good faith reliance on that Order to assist the Trustee through the extremely complicated process of terminating the Plan and rolling over the remaining balances to the respective former employees.

63.     Genova Burns, like all other professionals, is entitled to and deserves to be paid for its current work, as well as its future work on an interim basis, subject to the Court's approval.

## II.     Challenge to All Future Fee Applications.

64.     Holtzman clearly does not understand the role of the Trustee and its importance to the bankruptcy process. In his opinion, the Trustee should only engage in activities which bring money into the estate and should ignore those statutorily imposed obligations that do not result in money entering the estate. Based upon this mistaken opinion, Holtzman essentially wants the Trustee and her professionals either stop doing their statutorily prescribed jobs, or to finance the costs of their work on some sort of Holtzman-dictated contingent basis contrary to Congressional mandate.[6]

65.     Obviously, the request is not only beyond the scope of the Genova Burns Second Fee Application but also absurd.

66.     As detailed above, since her appointment, all the Trustee has done is worked diligently to administer this estate in accordance with her statutorily mandated responsibilities. As expected and permitted, the Trustee retained various professionals to

---

[6] Holtzman's request that the Trustee and her professionals finance this case for his benefit is particularly offensive, considering that Holtzman is an insider and member of the board of directors of the Debtor and, therefore, exercised some degree of care over Debtor and its ultimate financial condition.

17

assist her with her work. *See* Docket Entry Numbers 20, 32, 63, 68 and 120. Those professionals deserve and are entitled to be paid on an interim basis for their efforts.

67. Many of the Trustee's actions have resulted in bringing money into the estate. In fact, the Trustee and her professionals are responsible for recovering over three million dollars in assets.

68. In addition to securing funds for the benefit of the estate and its creditors, the Trustee and her professionals have undertaken a number of other actions, which have not resulted in recovery of money for the estate, but are nonetheless statutorily mandated.

69. A prime example of this mandated and beneficial work is the work undertaken by Genova Burns.

70. Other examples include: reviewing the Debtor's executory contracts relating to internet marketing and search list optimization and ultimately negotiate termination of such contracts, examining the financial affairs of the Debtor, which have required the review of thousands of documents and computer files, reviewing and responding to demands made by various vendors seeking reclamation of goods, starting to assess over 200 claims filed by creditors, including various tax-related issues and accounting for property received.

71. Whether those endeavors have or will result in additional funds for potential distribution for creditors is irrelevant, they are nonetheless mandated by the Bankruptcy Code and per se, benefit the estate.

72. In sum, Congress unmistakably mandated (1) that the Trustee and her professionals take certain action in administering this case and (2) that they be

compensated for that work, and Holtzman has provided no legal basis here (and none can possibly exist) to trump that Congressional mandate.

## CONCLUSION

73.     In light of the foregoing, the Trustee respectfully requests that this Court disregard the Holtzman Objection as to the Genova Burns Second Fee Application, and any and all fee applications already filed or future fee applications to be filed on behalf of the Trustee's professionals in this case.


**BECKER MEISEL LLC**
Attorneys for Chapter 7 Trustee



By: ___/s/ Stacey L. Meisel___
      Stacey L. Meisel

Dated:  December 8, 2010

S:\Docs\Becker Meisel\HOME DECOR\FEE APPLICATIONS\GENOVA FEE APP\GENOVA 2ND FEE APPLICATION\HOME DECOR - Trustee's Reply to Seymour Holtzman Response to GB 2nd Fee App - FINAL.doc

19